**In re BORREGO SPRINGS DEVELOPMENT CORP., a California Corporation dba Rams Hill Country Club, Debtor.**

**James L. Kennedy, Trustee, Appellant,**

v.

**Rams Hill, LLC, Appellee.**

**No. 99–2243–IEG.**

United States District Court, S.D. California.

Sept. 6, 2000.

## ORDER REVERSING BANKRUPTCY COURT'S JUDGMENT AND RE- MANDING FOR FURTHER PRO- CEEDINGS

GONZALEZ, District Judge.

Presently before the Court is the Chapter 7 Trustee's appeal from the Bankruptcy Court's final order determining the appropriate level of compensation for a bankruptcy trustee under 11 U.S.C. § 330. For the reasons discussed below, the Court reverses the Bankruptcy Court's determination of the Trustee's compensation and remands for further proceedings.

### BACKGROUND

Unless otherwise stated, the facts are drawn from the Bankruptcy Court's order and the record submitted by appellant, and are not specifically contested by the parties.

### 1. The Parties To The Appeal

On September 30, 1994, Borrego Springs Development Corp., a California corporation dba Rams Hill Country Club ("Debtor"), filed a petition for Chapter 7 bankruptcy relief, pursuant to Title 11 of the United State Code. (*See* Order on Fee Application of Chapter 7 Trustee and his Counsel (10/7/99) (*"October 7 Order"*) at 1–2.) Subsequently, on October 3, 1994, appellant James L. Kennedy was appointed as the Trustee of the Debtor's estate ("Trustee"). (*See id.* at 2.) Rams Hill, LLC, the ultimate purchaser of the Debtor's real property, is the appellee ("Appellee") in the case. (*See id.*)

### 2. The Underlying Bankruptcy Proceedings

The Debtor's principal asset was the Rams Hill Country Club development located in Borrego Springs, California, including an 18–hole golf course and a residential estate totaling 3,140 acres. (*See* Designation of Record Item ("D.R.I.") 3 at 2 ("Declaration of James L. Kennedy in Support of Trustee's First Interim Fee Application"); *see generally* D.R.I. 12 ("Declaration of James L. Trustee in Support of Trustee's Second Interim Fee Application"); Ex. D to D.R.I. 15 ("Declaration of Jeffrey T. Woolson, CB Commercial-golf Properties Group in Support of Trustee's Second Interim Fee Application").) At the time of the filing of the bankruptcy petition, the estate had enough assets to sustain operations for only two more months. (*See* D.R.I. 12 at 11–12.) Undertaking to sell the development as a going concern instead of liquidating various assets piecemeal, the Trustee entered into a Purchase and Sale Agreement within the two-month solvency period. (*See* D.R.I. 12 at 19.) Pursuant to a provision in the Purchase and Sale Agreement, most of the excess assets remaining after complete administration of the estate—the Rebate—would be returned to the eventual buyer of the project, here appellee. (*See* D.R.I. 12 at 19.)[1] After an overbid auction, the prop-

---

1. The division of this Rebate is the subject of     the Trustee's present appeal, since the Trustee

erty ultimately sold to Sterling International, Corp., the predecessor in interest to Appellee, for $12.2 million.

### 3. The Underlying Compensation Proceedings

The compensation proceedings which gave rise to the present appeal began on August 3, 1995, with the Trustee's first interim fee application for the period of October 3, 1994 through July 31, 1995. (*See October 7 Order* at 2; *see also* D.R.I. 1–3 (Trustee's First Interim Fee Application and Supporting Memoranda and Declaration); D.R.I. 4 (Appellee's Objection to First Interim Fee Application), & D.R.I. 5–6 (Trustee's Reply in Support of First Interim Fee Application).) After a hearing on September 5, 1995, the Bankruptcy Court, the Honorable Peter W. Bowie presiding, awarded the Trustee $100,000.00 instead of the requested $325,000.00. (*See October 7 Order* at 2; *see also* D.R.I. 8 ("Order After Hearing Granting Trustee's First Interim Fee Application").) After the Trustee's second interim fee application for the period from October 3, 1994 through November 14, 1997, the Bankruptcy Court awarded the Trustee additional compensation totaling $155,450.00 instead of the requested $296,742.22. (*See October 7 Order* at 2.) The Bankruptcy Court apparently ignored the Trustee's contention that his reasonable compensation pursuant to 11 U.S.C. § 330 should be based on the value of his efforts had they been rendered outside of bankruptcy, that is, 5% of the gross sales price, subject to the operation of the statutory compensation cap set forth in 11 U.S.C. § 326, which would yield an award totaling $396,742.22. (*See id.*) Instead, the Bankruptcy Court followed a lodestar method, concluding that an hourly rate of $500 for a total of 510.90 hours, which yielded a total award of $255,450,

was a "reasonable fee" for the Trustee's efforts under 11 U.S.C. § 330. (*See id.*)

On February 5, 1999, the Trustee filed his third and final fee application for compensation, again in support of his assertion that he was entitled to compensation on par with those performing similar tasks outside of bankruptcy under 11 U.S.C. § 330, subject to the limitation in 11 U.S.C. § 326—that is $396,742.22. (*See generally* D.R.I. 21–24 (Trustee's Third and Final Fee Application and Supporting Memoranda and Declarations).) In the alternative, the Trustee also supplemented the record by providing greater detail of his time records in deference to the Court's application of the lodestar method. (*See generally* D.R.I. 24 (Declaration of James L. Kennedy in Support of Third and Final Fee Application).) In its *October 7 Order*, the Bankruptcy Court concluded that fees in the amount of $255,450.00 already awarded to the Trustee were reasonable compensation for his services, declining to address the Trustee's arguments regarding compensation on par with professionals outside of bankruptcy proceedings.

### 4. Present Appeal

On October 15, 1999, the Trustee filed a Notice of Appeal from the *October 7 Order* with respect to "that portion of the Order relating to the disallowance of the additional fees and costs sought by the Trustee in his Third and Final Fee Application." (Not. of Appeal (10/15/00) at 1.) Simultaneously, the Trustee also elected to have his appeal reviewed by this Court. *See* 28 U.S.C. § 158(c)(1) (West 2000) (stating that an appeal is to be heard by a bankruptcy appellate panel unless any party elects to have such appeal heard by the district court); Fed. R. Bankr.P. 8001(e) (West 2000) ("An election to have an appeal heard by the district court under 28

---

requests that a portion of the assets be paid to him for reasonable compensation of his services under 11 U.S.C. § 330 before being paid to appellee and the sole remaining creditor. The Rebate is also the source of appellee's

standing to contest the Trustee's compensation. (*See generally* D.R.I. 4 ("Objection to Trustee's First Interim Fee Application by Rams Hill LLC's predecessor").)

U.S.C. § 158(c)(1) may be made only by a statement of election contained in a separate writing filed within the time prescribed by 28 U.S.C. § 158(c)(1).").

As both parties agree, the contested issue on appeal is whether the Bankruptcy Court properly determined the Trustee's reasonable compensation for services rendered in administering the Debtor's estate under 11 U.S.C. § 330. (*See* Appellant's Opening Brief ("Appellant's Br.") (5/1/00) at 1–5; *see also* Appellee's Response ("Appellee's Resp.") (5/22/00) at 1–3); Appellant's Reply (6/1500) at 1–6.) After various extensions per the parties' stipulated requests, the Court scheduled the appeal for a hearing on June 19, 2000, at which time it took the matter under submission.

## DISCUSSION

### A. Jurisdiction and Standard of Review

■ The district courts of the United States have jurisdiction to hear appeals from final judgments of the bankruptcy courts. *See* 28 U.S.C. § 158(a); *cf. In re Landmark Hotel & Casino, Inc.*, 872 F.2d 857, 860 (9th Cir.1989) (noting jurisdiction of the courts of appeals over final judgments of the bankruptcy courts under section 158(d)). The Ninth Circuit has defined a final decision in the bankruptcy context as one that " 'ends the litigation on the merits and leaves nothing for the court to do but [execute the] judgment.' " *Dental Capital Leasing Corp. v. Martinez (In re Martinez)*, 721 F.2d 262, 265 (9th Cir. 1983) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). On appeal, the district court reviews the bankruptcy court's findings of fact for clear error and reviews its conclusions of law *de novo*. *See* Fed. R. Bankr.P. 8013(a); *Microsoft Inc. v. DAK Indus. Inc. (In re DAK)*, 66 F.3d 1091, 1094 (9th Cir.1995). Questions of statutory construction are questions of law to be reviewed *de novo*. *See DeMassa v. MacIntyre (In re MacIntyre)*, 74 F.3d 186, 187 (9th Cir.1996); *In re Brown*, 239 B.R. 204, 206–07 (S.D.Cal.1999).

### B. Analysis

■ As a preliminary matter, although the appellant's opening brief states that the appeal is taken from various interim and final fee orders of the Bankruptcy Court (*see* Appellant's Br. at 5), neither party disputes that the issue of the trustee's reasonable compensation is a final, appealable decision with respect to which no further bankruptcy proceedings remain. *See Four Seas Center, Ltd. v. Davres, Inc. (In re Four Seas Center, Ltd.)*, 754 F.2d 1416, 1418 (9th Cir.1985) ("When further proceedings in the bankruptcy court will affect the scope of [an] order, the order is not subject to review in this court. . . .") (citation omitted). As a result, the Court finds that this appeal is properly brought from a final decision of the Bankruptcy Court. *See Turgeon v. Victoria Station Inc. (In re Victoria Station Inc.)*, 840 F.2d 682, 683–84 (9th Cir.1988).

The Trustee's primary contention on appeal is that the Bankruptcy Court incorrectly applied 11 U.S.C. § 330 in determining its award of reasonable compensation to him. Specifically, the Trustee objects that the Bankruptcy Court omitted from consideration the level of compensation that he would have received if his services had been rendered outside bankruptcy, subject to the statutory cap set forth in 11 U.S.C. § 326. (*See* Appellant's Br. at 1–5.) As a result, the Trustee seeks reversal of the Bankruptcy Court's decision declining to award him an additional $141,292.22 beyond the $255,450 already allowed, or total compensation in the sum of $396,742.22. (*See id.* at 9–15.) In opposition, Appellee first provides additional facts to "add context" (Appellee's Resp. at 1–2), then characterizes the Bankruptcy Court's determination under 11 U.S.C. § 330 as proper (*see id.* at 3–5), and finally, assigns new and independent error to the Bankruptcy Court's computation of the Trustee's compensation based on inclusion of the value of certain assumed debt in the sale of the

encumbered estate under the allegedly rejected theory of constructive disbursement (*see id.* at 5–8).

1. *The Statutory Criteria To Determine Reasonable Compensation For A Trustee Under 11 U.S.C. § 330 Include Enumerated Factors Beyond The Time Spent By The Trustee, And Are Limited By The Statutory Cap Set Forth At 11 U.S.C. § 326*

Sections 330(a)(1) and 326(a) of the Bankruptcy Code control the determination of the amount of reasonable compensation to be awarded a trustee appointed in a case under Chapter 7 or 11. *See In re Charles Henry Jenkins, Jr.*, 130 F.3d 1335, 1337 (9th Cir.1997); *see also In re Roderick Timber Co.*, 185 B.R. 601, 605 n. 3 (9th Cir. BAP 1995). Section 330(a)(1) provides, in pertinent part, that, upon a noticed hearing and subject to other sections of the title, including 326, a Trustee is entitled to "reasonable compensation for actual, necessary services rendered by such trustee . . ., based on the nature, the extent, and the value of such services, the time spent on such services, and *the cost of comparable services other than in a case under this title.*" 11 U.S.C. § 330(a)(1) (West 1994) (emphasis added).[2] As implemented, these criteria for setting trustee fees have closely resembled the factors used for awarding attorney fees. *See In re Financial Corp. of Am.*, 114 B.R. 221, 223 (9th Cir. BAP 1990) (citations omitted), *aff'd,* 946 F.2d 689 (9th Cir.1991); *see generally 2 Collier on Bankruptcy*, ¶ 330.05 [2] (15th ed.1989). In turn, those factors

include the time and labor involved; the novelty and difficulty of the questions presented by the case; and the experience, reputation and ability of the professional. *See id.* (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *In re Pacific Exp., Inc.*, 56 B.R. 859, 862–63 (Bankr.E.D.Cal.1985); and *In re Jansen*, 47 B.R. 641, 642 (Bankr.Ariz. 1985)).

■ Once reasonable fees are determined according to the above criteria, a trustee's fees are cut down, if required, to the statutory maximum stated in section 326(a), which limits the compensation of a Chapter 7 or 11 trustee to a percentage of the money disbursed to creditors. At the relevant time, section 326(a) provided, in pertinent part:

> [T]he court may allow reasonable compensation under section 330 of this title to the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, and three percent on any amount in excess of $3,000, upon all monies disbursed or turned over in a case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a) (West 1994).[3] With this cap in mind, the bankruptcy judge is accorded wide discretion in reviewing the trustee's services under the reasonableness and fee-setting criteria set forth in section 330(a)(1). *See Financial Corp. of Am.*, 114 B.R. at 224; *see also In re Gulf Hills Dev. Corp.*, 60 B.R. 366, 369

---

**2.** Sections 330 and 326 were amended by the Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, §§ 107, 224, 702, 108 Stat. 4106, 4111, 4130, 4150 (1994). Since the amendments only apply to cases filed on or after October 22, 1994, however, and present petition was filed before this date, the present case is controlled by the unamended section 330(a) quoted above. *See Jenkins*, 130 F.3d at 1337 n. 1; *Roderick*, 185 B.R. at 605 n. 3 (applying section 330(a) as it read prior to the Bankruptcy Reform Act of 1994, since the

case was filed prior to the effective date of the 1994 Bankruptcy Reform Act) (citing *In re Loken*, 175 B.R. 56, 63 n. 6 (9th Cir. BAP 1994)).

**3.** By the 1994 amendment to section 326(a), Congress increased the maximum compensation. *See* Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, § 107, 108 Stat. 4106, 4111 (1994). However, as previously noted, this amendment does not apply in this case.

(S.D.Miss.1985) (affirming bankruptcy judge's "sole discretionary power" to award reasonable fees to the trustee and his attorney, subject to the maximum ceiling); *accord In re McCombs*, 751 F.2d 286, 288 (8th Cir.1984).

Notwithstanding the factors which used to be given primacy under Bankruptcy Code,[4] the enactment of the applicable version of section 330(a)(1) is recognized as a "significant" shift in policy by Congress from the focus on any one factor to the overall reasonableness of the compensation of bankruptcy professionals based on a variety of factors:

> The compensation [for attorneys under section 330 as adopted by Congress in the Bankruptcy Reform Act of 1978] is to be reasonable, for actual necessary services rendered, based on the time, the nature, the extent, and the value of the services rendered, and on the cost of comparable services other than in a case under the bankruptcy code.

*In re Manoa Finance Co., Inc.*, 853 F.2d 687, 689 (9th Cir.1988) (citing H.R.Rep. No. 595, 95th Cong.2d Sess. 329–30, *reprinted in* 1978 U.S.Code Cong. & Admin.

News 5963, 8286); *see also id.* at 690 (quoting the testimony of Senator DeConcini, the drafter of the amended version of section 330 that was adopted, that the policy under the newly adopted section 330 "is to compensate attorneys and other professionals serving in a [bankruptcy] case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable services [on the market].") (citing 124 Cong. Rec. 33,994 (1978), *reprinted in* 1978 U.S.Code Cong. & Admin. News 6505, 6511).[5]

■ It is within this context that the Trustee advances his argument that section 330(a), while referencing federal fee-shifting statutes as analogous for determining the compensation of bankruptcy professionals, expressly contemplates compensation commensurate with an amount the Trustee would have received outside of bankruptcy. (*See* Appellant's Br. at 9.) Neither the Ninth Circuit nor the Ninth Circuit Bankruptcy Appellate Panel has expressly addressed this argument, or explained exactly how and to what extent the cost of the Trustee's services outside of

---

**4.** As the Ninth Circuit in *Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 426 (9th Cir.1983), noted, and as appellant concedes, the time spent by the Trustee was considered "very important" in determining the reasonable compensation for his or her services under the Bankruptcy Code before the Bankruptcy Act of 1978. (*See* Appellant's Br. at 6–7 (citations omitted).) Indeed, before the 1978 amendments to the Bankruptcy Code, the Trustee's hours of service were variously accorded "extreme importance," *Matter of Beverly Crest Convalescent Hosp., Inc.*, 548 F.2d 817, 820 (9th Cir.1976), "major importance," *Official Creditors' Committee of Fox Markets, Inc. v. Ely*, 337 F.2d 461 (9th Cir.1964), and "great weight," *Matter of York Int'l Bldg., Inc. v. Chaney*, 527 F.2d 1061, 1069 (9th Cir. 1975), by courts in this Circuit.

**5.** In *Manoa*, the Ninth Circuit was faced with the somewhat different issue of whether, under section 330 of the Bankruptcy Reform Act of 1978, a fee award based on an attorney's standard hourly billing rate and the actual number of hours worked may be enhanced on the basis of the factors set forth in *Kerr v. Screen Extras Guild*, 526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425 U.S. 951, 96 S.Ct.

1726, 48 L.Ed.2d 195 (1976). *See* 853 F.2d at 688. In keeping with the general standards applicable to federal fee-shifting statutes, the Ninth Circuit in *Manoa* held that compensation awards under section 330 "may be enhanced only in exceptional circumstances where the applicant produces specific evidence that an award based on his standard hourly rate and actual hours worked does not fairly compensate for the work done, as is the purpose of the *Kerr* factors." 853 F.2d at 688. Since this Court is faced with the issue of the actual *application* of the factors under section 330(a) in determining the Trustee's fee award and not any enhancement beyond such reasonable compensation, it finds the analysis of section 330(a) in *Manoa* only marginally relevant. Likewise, the Ninth Circuit's statement that "[a] compensation award based on a reasonable hourly rate multiplied by the number of hours actually and reasonably expended is presumptively a reasonable fee" is to be applied to the present case with the caveat that bankruptcy trustees do not perform services analogous to attorneys, or that even of bankruptcy attorneys. *Id.* at 691.

bankruptcy should be factored in to the criteria set forth at section 330(a).[6] Suffice it to say, however, that in recognizing the applicability of the "lodestar" method used in federal fee-shifting statutes as analogous—multiplying the number of hours spent with a standard hourly rate—the Ninth Circuit has specifically cautioned courts to be mindful of the differences underlying the policy of compensation and nature of services in bankruptcy proceedings:

> Congress has expressed its intent that bankruptcy compensation be commensurate with that earned in comparable non-bankruptcy cases while the usual fee-shifting statute is not 'intended to replicate exactly the fee an attorney would earn through a private fee arrangement with his client.'

*Manoa*, 853 F.2d at 691 (quoting *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). Specifically, the Court in *Manoa* concluded with the "caution that the general principles [underlying compensation of bankruptcy professionals] may require some accommodation to the peculiarities of bankruptcy matters...." 853 F.2d at 691.

Other courts have pointed out that strength of the analogy between the lodestar approach to awarding compensation and section 330(a) lies for the most part in the relative similarity of function performed by attorneys both in and out of bankruptcy, while the services of the trustee are somewhat different. *See Matter of Rauch*, 110 B.R. 467, 473 (Bankr.E.D.Cal. 1990) ("While these factors [underlying the lodestar approach] are applicable to attorneys, they are not necessarily applicable to trustees. A significant difference exists between the functions performed by attorneys and those functions performed by trustees."); *cf. also Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 960 (9th Cir.1991) (concluding that while the lodestar approach is persuasive, it is not controlling in determining compensation for bankruptcy attorneys due to the uniqueness of bankruptcy proceedings and affirming attorney compensation as a percentage of bankruptcy recovery); *In re Yermakov*, 718 F.2d 1465, 1471 (9th Cir.1983) (noting the primacy of the "lodestar" method in calculating attorney's fees in bankruptcy yet recognizing that it is not the exclusive method under section 330). Finally, judicial recognition that there are no "prevailing hourly rates" for the type of services performed by bankruptcy trustees, *see In re Guyana Dev. Corp.*, 201 B.R. 462 (Bankr.S.D.Tex. 1996), further buttresses the argument that, under the totality of circumstances, the level of compensation outside of bankruptcy should be accorded due deference in determining a Trustee's compensation.

In light of the above, the Court agrees with the Trustee that "it flies in the face of the legislative intent of the *Code* to financially punish the trustee for the foresight and skill brought to bear for having per-

**6.** There is, in fact, little comprehensive discussion on the application of the comparable value of the Trustee's services outside of bankruptcy, and the other factors outlined in section 330(a) in the Ninth Circuit, other than the recognition that a prerequisite to compensation is compliance with the bankruptcy rules. *Cf. In re Travel Headquarters, Inc.*, 140 B.R. 260 (9th Cir. BAP 1992); *In re Financial Corp. of Am.*, 114 B.R. 221 (9th Cir. BAP 1990). As such, this issue is one of first impression in the Circuit, at least in the context of determining the compensation of bankruptcy trustees as opposed to other professionals administering the bankruptcy estate. To counter the Trustee's argument that this is a novel issue in this Circuit, appellee cites to the decision of the Third Circuit in *In re Lan Assoc. XI, L.P.*, 192 F.3d 109 (3d Cir.1999), which provides "considerable guidance in this instance." (Appellee's Resp. at 5 (citing Appellant's Br. at 9).) While the Court discusses the Third Circuit's reasoning in *Lan* where appropriate, it still agrees with the Trustee that the issue presented here is one not previously addressed in the Ninth Circuit. *See In re Miniscribe Corp.*, 241 B.R. 729, 751 (Bankr.D.Col.1999) (admitting that courts have not resolved an appropriate approach to determining Trustee compensation under section 330, but that whatever approach is used by applying the lodestar method and enhancements would be subject to the statutory limits in section 326).

formed all of th[e] tasks [of a bookkeeper, auctioneer, and property manager of the estate]." (Appellant's Br. at 11 (emphasis in original).) This is not to say that Trustee compensation under section 330(a) must be based exclusively on the value of the Trustee's skill and services outside of bankruptcy.[7] The Court finds, however, that "the cost of comparable services other than in a case under this title," 11 U.S.C. § 330(a)(1) (West 1994), must be properly considered as *one of the enumerated factors* in a determination of the Trustee's compensation for services to the bankruptcy estate, subject to the statutory limitation in section 326(a).

2. *The Bankruptcy Court Failed To Apply The Statutory Factors Set Forth In Section 330(a) To The Present Case, Or Applied Them Erroneously*

■ It is unclear what factors the Bankruptcy Court considered in determining the Trustee's compensation in its final *October 7 Order*, since it neither addressed the statutory criteria under section 330(a)(1) nor explained its failure to take into account the additional hours presented by the Trustee. The Bankruptcy Court previously determined that the lodestar approach was appropriate, with an hourly rate for the Trustee's services of $500 and total hours recorded as 510.90. (*See generally* D.R.I. 20 ("Order on Second Fee Application of Chapter 7 Trustee").) At that time, the Bankruptcy Court did not address the Trustee's argument that the

value of his services outside of bankruptcy should be considered in determining his compensation, nor did it consider the declarations filed in support of such a position.[8] When, in support of his third and final fee application, the Trustee presented additional hours totaling 335.8, which were reconstructed after the Bankruptcy Court's second interim fee order focused on the lodestar approached, he also again presented his argument that the value of his services outside of bankruptcy, subject to the cap in section 326, would be the appropriate compensation for his services to the estate. Ignoring the latter, the Bankruptcy Court focused exclusively on the additional hours presented, (*October 7 Order* at 3–6), and without even considering those additional hours, the Bankruptcy Court stated:

> The Court made its prior award taking into consideration the overall value of the Trustee's services to the estate in this case. As explained by the Court, this is reflected in the unusually high hourly rate allowed of $500. Had the Trustee been able to provide evidence of additional hours in its previous two applications the Court would not have increased the amount of the award, but rather decreased the hourly rate. The bottom line is that the Court awarded $255,450.00 in fees as reasonable compensation for the Trustee's efforts in this case.

(*October 7 Order* at 5.) Contrary to the Bankruptcy Court's assertion, however, neither its previous consideration of the

---

**7.** The Appellant broadly states that "[t]he analysis then is simple: determine what the Trustee did, and compensate him or her as he or she would be compensated outside of bankruptcy. That is it." (Appellant's Br. at 11.) Contrary to the seeming bright-line stance of this statement, this Court understands the Trustee's argument to be more nuanced—that is, that based on the nature, extent, and value of the Trustee's services, including the time spent, and in light of the cost of comparable services other than in a case under Title 11, the Court must arrive at a reasonable compensation for the Trustee under section 330(a), subject to section 326(a). Since this is precisely what appellant proceeds to do in support of his argument on appeal, (*see id.* at

12–16), the Court clarifies it does not find that the analysis under section 330(a) should be based exclusively on value of the trustee's services outside of bankruptcy, but on the various factors discussed above, *including* the cost of comparable services outside of bankruptcy.

**8.** (*See, e.g.,* D.R.I. 14 ("Declaration of William H. Sherman, Golf Realty Corporation/William Sherman Company in Support of Trustee's Second Interim Fee Application") & D.R.I. 15 ("Declaration of Jeffrey T. Woolson, CB Commercial–Gold Properties Group in Support of Trustee's Second Interim Fee Application")).

"overall value of the Trustee's services to the estate" nor its present conclusion that $255,450.00 is the "reasonable compensation for the Trustee's efforts in this case," is supported by a reasoned application of the various factors set forth in section 330(a)(1), as required. *Cf. In re Columbia Plastics, Inc.,* 251 B.R. 580, 585 (Bankr. W.D.Wash.2000) (noting, in reviewing a fee award under section 330(a)(3) as amended in 1994, that bankruptcy courts must evaluate the sufficiency of the evidence provided by the trustee in support of the fee application and specifically take into consideration whether the overall fee is reasonable under the factors outlined in 11 U.S.C. § 330(a)). Likewise, the Bankruptcy Court twice omitted even a cursory discussion of the Trustee's argument that the value of his services outside bankruptcy may have some relevance in determining his compensation under section 330(a).[9] Also, the Bankruptcy Court does not explain the weakness or unpersuasiveness of such an argument in arriving at its fee award.

In fact, it is irrelevant that the Bankruptcy Court previously arrived at the hourly rate of $500.00 as "reasonable compensation" for the Trustee's services, since it expressed its continuing belief that a "bottom line" compensation of $255,450.00 was due the Trustee based on subjective factors that were not revealed in any of its orders. In stating that, if previously presented with hours greater than 510.90, it would have adjusted the hourly rate accordingly to arrive at a total fee award of $255,450.00, the Bankruptcy Court all but admitted that it neither considered whether the additional hours were properly presented, nor applied the section 330(a) factors, including the comparable value of the Trustee's services outside of bankruptcy,

to the newly supplemented record. *See, e.g., In re Missionary Baptist Found. of Am.,* 77 B.R. 552, 554 (Bankr.N.D.Tex. 1987) (holding that in being presented with an estimate of hours, the court may determine that where the trustee's functions make detailed record-keeping unreasonable, the trustee need not keep time records as detailed as those of an attorney to receive compensation under section 330(a)); *Roderick Timber,* 185 B.R. at 606 (affirming the importance of awarding fees to the trustee " 'to the level that has been proven to be actual, necessary and reasonable' " by putting the applicant to its burden of proof under section 330(a)) (quoting *In re Evangeline Refining Co.,* 890 F.2d 1312, 1327 (5th Cir.1989)). As such, whether it subjectively applied the factors set forth in section 330(a)(1) or not, the Bankruptcy Court did not make its reasoning or analysis under the section 330(a) factors explicit in any of its orders, let alone address the Trustee's present argument regarding the comparable value of his services outside bankruptcy. To the extent the Bankruptcy Court did arrive at the "unusually high" hourly rate of $500 per hour or determine a "bottom line" figure of $255,450.00, it erred in first arriving at an amount of compensation and then adjusting the hourly rate and the hours presented by the Trustee in support of his final fee application.

3. *The Appellee's Objections To The Appellant's Arguments Are Either Unsupported By The Record Or Inapplicable*

(i) *Appellee Fails To Elucidate The Bankruptcy Court's Reasoning*

In the face of a silent record with respect to the Bankruptcy Court's fee award,

---

**9.** Since both the Sherman and the Woolson declarations, (*see* D.R.I. 14 & 15), averring that the fees for a similar sale as executed by the Trustee would range from 3% to 6% and 2% to 4%, respectively, were made part of the record in support of the Trustee's third and final fee application, (*see* D.R.I. 23 ("Trustee's Request for Judicial Notice in Support of Third and Final Fee Application.")), the Court

is at a loss to understand the Bankruptcy Court's failure to address these arguments. This is especially true in light of appellant's contention that both declarant were independently aware that the Debtor was offering 5% commission to a procuring broker before filing his Chapter 7 bankruptcy petition, and neither pursued the sale, considering it to be a challenging property to market.

appellee conclusorily argues that the Bankruptcy Court committed no error in exercising its discretion to determine the Trustee's reasonable compensation:

> Bankruptcy Judge Bowie did not abuse his discretion in finding reasonable compensation to the Trustee under Section 330(a). *He considered all the relevant factors in his ruling* in an area which affords bankruptcy judges wide discretion.

(Appellee's Resp. at 7.) Admittedly, the Bankruptcy Court has wide discretion in determining the reasonable compensation of a bankruptcy professional under section 330(a), as already conceded by the Court. *See generally In re Lee Way Holding Co.*, 102 B.R. 616, 628 (S.D.Ohio 1989); *In re Roco Corp.*, 64 B.R. 499, 505 (D.R.I.1986); *cf. Columbia Plastics*, 251 B.R. at 585. However, it is not a correct statement that the Bankruptcy Court considered all the relevant factors and that its reasoning was "thorough and appropriate" (Appellee's Resp. at 4). In making these arguments, the appellee fails to cite to a single item in the record, let alone the Bankruptcy Court's final *October 7 Order* which is the subject of the present appeal. Nor does the appellee describe what it believes to have been the clear, thorough, and appropriate reasoning by the Bankruptcy Court. Indeed, the appellee even now fails to address the substantive issues raised by appellant regarding the appropriate factors to be considered under section 330(a)(1) in the Ninth Circuit, the support for approaching compensation under section 330(a)(1) in the manner suggested based on the policy and legislative history of that subsection, and the application of the comprehensive criteria to the evidence in the present case.[10]

Instead, appellee mischaracterizes the Trustee's present appeal as another step in "doggedly seek[ing] the alleged statutory cap based on the constructively disbursed funds as though he had an entitlement to them." (Appellant's Resp. at 3.) As explained above, the Trustee seeks reasonable compensation for his services based on the factors set forth in section 330(a), including computation of the value, nature, extent, and time of his services as a percentage of the gross sale amount as they would be valued outside of bankruptcy. However, the Trustee forthrightly accedes to the statutory limit set forth in section 326. (*See* Appellant's Br. at 12 (arguing that 5% of the 12,425,000.00 gross sale price, or $621,250.00, is the Trustee's reasonable level of compensation under 11 U.S.C. § 330 but noting that "[t]his figure, in turn, is reduced by the limitations on compensation under 11 U.S.C. § 326, which is $396,742.22.")). In fact, the Trustee candidly admits that the "reasonable compensation" of his services is greater than the maximum amount sanctioned by section 326, but that he submits to the operation of the statutory maximum since it is the law under the Bankruptcy Code:

> Make no mistake, the Trustee does not argue that the limitations of § 326 necessarily translate to 'reasonable' compensation. The Trustee acknowledges the limitations of § 326, and that, he is

---

10. To the extent that appellee does challenge any of the substantive issues raised by the appellant, it distinguishes the facts underlying the compensation award by the bankruptcy court in *In re Miniscribe*, 241 B.R. at 741, without addressing that court's reasoning and application of section 330(a)(1) in setting the reasonable fee for the bankruptcy trustee at the high amount that the court did. (*See* Appellee's Resp. at 5.) It is noteworthy that the court in *Miniscribe* itself admitted that it was unsure as to which approach to determining reasonable compensation was applicable to the case at hand under section 330(a).

*See* 241 B.R. at 751; *see also* n. 6 *supra*. Moreover, appellee fails to point to any dispute in the record that the Trustee's services in the present case were less than exemplary, although it does argue that such was case. Indeed, conclusorily arguing that "[e]ven if legally sustainable, the [Trustee's] request is not reasonable," (Appellee's Resp. at 5), the appellee makes the same mistake as the Bankruptcy Court in failing to address or cite to any authority undermining the appellant's analysis of section 330(a)(1), let alone determining that it is *per se* unreasonable.

legally incapable of being awarded reasonable compensation as would otherwise be allowable under § 330.

(Appellant's Reply at 5.) In other words, instead of seeking the statutory amount applicable to the present case per section 326, the Trustee properly seeks reasonable compensation under section 330(a)(1), conceding to the operation of the limitation section 326 on that amount only *after* such a determination and as necessary. *See Roderick*, 185 B.R. at 605 (noting that the statutory maximum in section 326(a) comes into play only after a court determines a reasonable fee award according to the appropriate criteria in section 330 and that award exceeds the statutory maximum).

### (ii) Appellee's Fails To Successfully Demonstrate Any Impropriety In The Trustee's Record–Keeping Or The Nature Of His Services

Next, appellee focuses its attention obsessively on the Trustee's record-keeping, suggesting some unspecified impropriety in the presentation of additional hours by the Trustee in support of his third and final fee application. (*See* Appellee's Resp. at 3–4.) Ironically, this is one issue that is both well-settled in this Circuit and addressed by the Bankruptcy Court. First, the factors on which appellee focuses—the Trustee's failure to (i) produce the additional hours previously despite the fact that they relate back "as far as 4 years," (ii) itemize the "newly discovered" time, and (iii) keep contemporaneous records of the time spent, among others—have been recognized as raising no specific impropriety in the context of the Trustee's duties. *See Rau*, 708 F.2d at 427 (noting that an estimate of hours, if found reasonable by the bankruptcy court, is sufficient for trustee compensation); *Missionary Baptist Found. of Am.*, 77 B.R. at 554 (Bankr.N.D.Tex.1987) (holding that the court may determine that a trustee's functions make detailed record-keeping unreasonable); *Matter of Rauch*, 110 B.R. at 474 (noting that in the absence of time records as a result of the Trustee's functions, the court may award a reasonable commission based on his performance).

In fact, the Ninth Circuit Bankruptcy Appellate Panel has specifically recognized a trustee's right to supplement interim fee applications with additional records in light of the unique functions of the trustee:

> Due to the nature of the trustee's responsibilities, the court may determine that the trustee need not keep time records as detailed as those of an attorney. . . . [The Trustee] may be able to produce time records with a final fee application which the bankruptcy court finds adequate to support an award of fees.

*Roderick*, 185 B.R. at 606–07. Second, the Bankruptcy Court in the present case itself found the presentation of the additional hours by the Trustee in support of his final fee application unremarkable, and did not ground its decision not to award additional fees due to an inconsistency in the supplemental time records. (*See October 7 Order* at 5 ("Assuming the newly produced records are sufficiently accurate, the Court would not award additional fees . . . .")). Indeed, the Bankruptcy Court went so far as to express its sympathy with the Trustee in the matter. (*See id.* at 4 ("The Court is not without sympathy for the difficulty of maintaining records.")). Since no one has suggested any impropriety in the Trustee's routine discovery and reconstruction of supplemental time spent in his services based on the voluminous documentation generated by the proceedings, this Court will not countenance appellee's implication to the contrary.

Appellee also resorts to characterizing the Trustee's performance in the present case as, at best, ordinary, and at worst, mediocre. (*See* Appellee's Resp. at 2 (stating that the Trustee spent a moderate 200 hours in setting up the bankruptcy sale and afterwards, engaged in "ordinary trustee tasks"); *id.* (noting that the Trustee paid the bulk of unsecured creditors only 54 cents on the dollar); *id.* at 4 (stating that the case was "a fairly routine

asset sale case"); *id.* at 5 (concluding that the "Trustee's administration was reasonable and up to the standard expected of his post but had not particularly extraordinary component.")). Of course, none of these arguments are supported by the record. To the contrary, appellee is forced to concede that the Bankruptcy Court itself "described the Appellant's work as 'tremendous[.]'" (*Id.* at 4 (no citation in original).) Additionally, the record is replete with evidence that at one point or another, all parties and the Bankruptcy Court agreed that the Trustee acted with skill and expertise. (*See* D.R.I. 7 ("Transcript of Hearing on Trustee's First Interim Fee Application") at 8–9 (stating, in representing appellee's predecessor in interest, that the Trustee "has been as good as you could ask for a Trustee ...."); *see also* D.R.I. 19 ("Transcript of Hearing") (bankruptcy court's recognition of the Trustee's exemplary efforts); Ex. C to D.R.I. 18 ("Reply Declaration of Gary E. Slater in Support of Trustee's Second Interim Fee Application") (noting press reports that a principal of appellee's proposed to erect a bronze bust of the Trustee at the golf course in recognition of his extraordinary efforts)). Likewise, there is sufficient support that the circumstances under which the Trustee was appointed to perform his services were more complex than would be surmised by appellee's characterization of the case as a simple asset sale under Chapter 7 of the Bankruptcy Code. (*See* D.R.I. 12 ("Declaration of James L. Kennedy in Support of Trustee's Second Interim Fee Application") at 8 (noting that failure to act within two months would have left an administratively insolvent estate since the estate only had assets to operate for that time); *see also* D.R.I. 14 & 15 (expert declarations from Sherman and Woolson testifying to the challenging nature of the Trustee's task, and the complex issues involved, in selling the Debtor's property as a going concern)). As a result, the Court finds that there is no merit to the appellee's apparent contentions that the Bankruptcy Court's failure to apply the statutory section 330(a) factors is somehow mitigated or excused by the Trustee's unremarkable efforts.

*(iii) Appellee's New Issue Regarding The Bankruptcy Court's Determination Of The Appropriate Fee Base Utilized By The Bankruptcy Court Is Improper And Meritless*

Additionally, the appellee objects, for the first time in its response to the appellant's opening brief, to the Bankruptcy Court's utilization of the fee base used in computing the limits on the Trustee's compensation award under section 326. (*See* Appellee's Resp. at 5–7.) As previously noted, the sale price of the Debtor's principal asset at the overbid auction was $12,425,000.00. Appellee now notes, without dispute from appellant, that the real property was encumbered with $10,200,000 in water bond indebtedness. (*See id.* at 6; *accord* Appellant's Reply at 5–6.) Appellee also notes, without dispute from appellant, that the Bankruptcy Court included the $10,200,000 water bond indebtedness encumbering the real property in the sale price of $12,425,000 by deeming it constructively disbursed by the Trustee through the sale of encumbered estate assets to a third party under the Ninth Circuit's decision in *Rau*, 708 F.2d 419.[11] (*See* Appellee's Resp. at 6; Appellant's Reply at 6.) The Appellee supplements these facts with the Third Circuit's rejection of such a theory of "constructive disbursement" in *Lan*, 192 F.3d at 116. (Appellee's Resp. at 6–7 (quoting *Lan*).) Based on these, appellee's argument seems to be that even if the Trustee is entitled to compensation commensurate with those outside bankruptcy, the limit on that compensation under the language of section 326—as a percentage of "all monies disbursed or turned over in a case by the trustee"—should not include value of the assumed water bond indebtedness. As such, instead of calculating the Trustee's statutory maximum compensation as a per-

11. *See id.* at 423–24 (providing for the inclusion of the value of the assumed debt in the sale of encumbered estate assets to a third party in computing Trustee's fee award).

centage of $12,425,000.00—the purchase price paid by appellee for the debtor's estate—the Court should calculate it as the appropriate percentage of $2,225,000, which is appellee's overbid price minus the water bond indebtedness, and results in much less than the $396,742.22 maximum presently acceded to by the Trustee.

■ Preliminarily, the Court agrees with appellant that this issue is not properly before the Court. Neither did appellant raise the issue in its appeal, nor did appellee timely file a notice of cross-appeal raising the issue. *See* Fed. R. Bankr.P. 8002(a) (West 2000) ("If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 10 days of the date on which the first notice of appeal was filed ...."). As such, this new assignment of error to the Bankruptcy Court's analysis independent of any issue raised by appellant constitutes a waiver of appellee's right to raise the issue. *See* 10 *Collier on Bankruptcy* ¶ 8002.06 (1997). Since "[t]he timely filing of a notice of cross-appeal is jurisdictional and cannot be waived," *In re Maruko,* 219 B.R. 567, 570 (S.D.Cal.1998) (internal quotation marks and citation omitted), the Court refuses to address appellee's belated and improper arguments. *Cf. also Matter of Ramsey,* 612 F.2d 1220, 1222–23 (9th Cir.1980) ("An untimely notice [of appeal] deprives the district court of jurisdiction to review the bankruptcy court's order or judgment.") (citing *Matter of Estate of Butler's Tire & Battery Co., Inc. v. Ferrous Financial Services,* 592 F.2d 1028, 1034 (9th Cir. 1979); *In re W.T. Grant Co.,* 425 F.Supp. 565, 567 (S.D.N.Y.1976), *aff'd without opinion, Berger v. Rodman,* 559 F.2d 1202 (2d Cir.1977)); *accord In re Ranch Partners, Ltd.,* 146 B.R. 833, 837 (D.Colo.1992) (citing *Frymire v. PaineWebber, Inc.,* 107 B.R. 506, 514 (E.D.Pa.1989).)

■ Even if the Court were jurisdictionally able to address appellee's arguments, it would find that appellee's reliance on the Third Circuit's decision in *Lan* is misplaced, not only because that case is distinguishable but because it is contra-dicted by binding Ninth Circuit precedent. In *Lan,* the Third Circuit addressed, as an issue of first impression, whether the value of a "credit bid" of a secured creditor, which resulted in the secured property being returned to the security holder, could be included in the base on which the bankruptcy trustee's maximum allowable compensation was calculated under section 326. *See* 192 F.3d at 114 ("This court has not previously addressed the appropriateness of including the value of a credit bid in the base on which a trustee's compensation is calculated under 11 U.S.C. § 326(a).") In resolving the issue, the Third Circuit affirmed the district court's conclusion that "Congress intended to limit trustee compensation to 'moneys' in the narrow sense, i.e., in the sense of 'sums of money,' 'something generally accepted as a medium of exchange,' or 'assets or compensation in the form of or readily convertible to cash,'" instead of the Trustee's arrangement and negotiation of a credit bid transaction. *Id.* at 117.

As enumerated above, these circumstances—analogous to an abandonment or foreclosure without estate equity—could not be more unlike the present case, where the Trustee successfully negotiated and administered the Debtor's principal asset to a third party as a going concern subject to existing liens, held for example, by the Borrego Springs Water District. (*See* Appellant's Reply at 9, n. 3.) Moreover, the Third Circuit in *Lan* specifically rejected the argument that there was no distinction between a credit bid sale to a secured creditor and a sale free and clear of liens to a third party. *Id.* at 114. Although the present case does not involve a sale free and clear of liens, it is to a third party, and there is sufficient support in the Ninth Circuit for including even the administration of secured claims in a bankruptcy estate as moneys that the trustee disburses for the purpose of computing the trustee's maximum compensation under section 326. *See Rau,* 708 F.2d at 423–25 (concluding that it would be inequitable to exclude from the trustee's maximum allowable compensation fund the moneys associ-

ated with the administration of secured claims encumbering an estate, even as to the portion of the asset's value that does not actually enter the estate and is not distributed to the creditor by the trustee); 3 *Collier on Bankruptcy* ¶ 326.02[2][f] (1999) (discussing Ninth Circuit preceding in holding that section 326 is unaffected by whether the eventual disposition of the encumbered assets is "free and clear of" or "subject to" liens). It is irrelevant that the Third Circuit in *Lan* found *Rau* unpersuasive, as that is the binding precedent of the Ninth Circuit, properly applied by the Bankruptcy Court in previously rejecting the same argument by appellee. (*See* D.R.I. 20 ("Order on Second Fee Application of Chapter 7 Trustee") at 2 ("Transfer by assumption or satisfaction of the bond obligations was an essential element of the sales transaction .... It is of no moment to the issue of includability of the bond obligation that the Trustee did not have to expend a lot of hour on it.")).

■■■ Finally, the appellee also objects that the Trustee did not spend enough time on refinancing the water bond indebtedness to warrant the award of the maximum fee allowable under the Bankruptcy Code and point generally to the Trustee's lack of assistance in the assumption or refinancing of that indebtedness by appellee (worth $10.2 million). (*See* Appellee's Resp. at 1–2, ¶¶ 2–3.) Even if this issue were properly raised, the Court finds it meritless. The Trustee's services, directed at the sale of the Debtor's principal asset—the real property—to appellee, was necessarily devoted to ridding the bankruptcy estate of the water bond indebtedness by finding a third party such as appellee to assume the obligations encumbering the property. As such, the Trustee had no obligation to spend any effort in assisting appellee's refinancing of the water bond indebtedness after setting up and attending the auction for the sale of the property and finalizing subsequent

details related thereto. (*See also* D.R.I. 20 at 2.) In other words, the Trustee's efforts should and were directed to the benefit of the creditors of the estate, not the buyer of its assets. Since the Trustee's sale of the estate's assets, including the encumbered real property, was successful, and his fee application is premised on that service, it is irrelevant that appellee's choice of refinancing the real property proved costly to appellee.[12]

In sum, the Court finds that none of the objections or arguments raised by appellee obscure the arbitrary nature of the Bankruptcy Court's fee award in the absence of a detailed reasonableness analysis under section 330(a). Accordingly, the Court **REVERSES** the Bankruptcy Court's October 7 Order determining the Trustee's reasonable compensation under section 330(a)(1).

### 4. Remand Is The Proper Relief In Light Of The Bankruptcy Court's Error

■■■ Admittedly, appellant is correct that his arguments and evidence have been previously presented to the Bankruptcy Court, and are applicable to the record as it existed before the Bankruptcy Court (*See* Appellant's Br. at 12 ("The Trustee's position here is the same as it was below.")). There is also some merit to appellant's contention that the Trustee's compensation should be decided now, without further delay, in the interests of judicial economy and expediency. (*See id.* at 18.) The Court is mindful, however, that it is the bankruptcy court's exclusive province to determine the reasonable compensation for a trustee's services under section 330(a). *Cf. Columbia Plastics,* 251 B.R. at 585; *Financial Corp. of Am.,* 114 B.R. at 224 (9th Cir. BAP 1990). As a result, the Court will not second-guess the Bankruptcy Court's findings of fact regarding the Trustee's skill or services, nor apply the statutory factors outlined and discussed above. Instead, the Bankruptcy

---

**12.** This is especially true since, as appellant points out, appellee chose one of the most difficult forms of refinancing conceivable, foregoing conventional financing. (*See* Appellant's Reply at 6.)

Court must evaluate the sufficiency of the evidence provided by the Trustee—who has the burden of establishing that he is entitled to the fees requested by filing a detailed application with the court, Fed. R. Bankr.P.2016(a)—and *expressly* consider whether the overall fee is reasonable under the factors discussed in section 330(a).

Accordingly, the Court **REMANDS** the case to the Bankruptcy Court for a determination of the Trustee's reasonable compensation under section 330(a)(1).

### CONCLUSION

For the foregoing reasons, the this Court **REVERSES** the bankruptcy court's determination that $255,450 was reasonable compensation for the Trustee's services and **REMANDS** the case to determine the amount of compensation due the Trustee based on the appropriate criteria pursuant to 11 U.S.C. § 330 and 11 U.S.C. § 326 discussed above.

**IT IS SO ORDERED.**