**In re Duvalier Rodriguez CASTRO, Debtor.**

**No. 03–11096–A7.**

United States Bankruptcy Court, S.D. California.

Jan. 25, 2005.

---

3. Debtor's appraisal was conducted on November 12, 2004.

Jeffrey D. Schreiber, La Jolla, CA, for debtor.

Gerald H. Davis, Coronado, CA, trustee.

### MEMORANDUM DECISION FOR FIRST AND FINAL FEE APPLICATION

LOUISE DECARL ADLER, Bankruptcy Judge.

## I.

### INTRODUCTION

At the hearing held October 28, 2004, the Court took under submission the Application of Gerald H. Davis for First and Final Compensation and Reimbursement of Expenses of Chapter 7 Trustee ("Trustee"), and the Application for First and Final Award of Compensation and Reimbursement of Expenses of Attorneys for the Trustee ("Sparber Rudolph"). The issue under submission is the amount of the reasonable compensation to be awarded to the Trustee and his counsel under 11 U.S.C. § 330(a).[1]

The Trustee asks the Court to award him enhanced compensation in the amount of the maximum statutory cap of $20,800.98 and reimbursement of costs of $242.41. Based upon the time spent by the Trustee on this case, the maximum award would result in paying him an hourly rate of $424.51.[2] The Trustee's Fee Application indicates his normal hourly rate is $325/hr.; he bills his paralegal at a rate of $85/hr. If the Court awards compensation based upon the Trustee's normal hourly rates multiplied by the time spent on this case, he would receive $15,141, which would equate to paying him a blended rate of $309/hr. for his services in this case. For the reasons more fully set forth herein, the Court concludes the maximum compensation is not reasonable and reduces it.

Sparber Rudolph asks this Court to award the firm $27,698 in fees and $1,505.39 in costs for its services to the Trustee in this case.[3] However, Sparber Rudolph's Fee Application includes fees for services which should have been performed by the Trustee. *See In re Garcia*, 317 B.R. 810 (Bankr.S.D.Cal.2004). The

---

1. Hereinafter, all code and section references are to 11 U.S.C. § 101 *et seq.* unless otherwise specified.

2. The Trustee and his paralegal spent a total of 49 hours on this case.

3. Sparber Rudolph spent a total of 93.80 hours on this case.

Court will deduct $1,367.50 from Sparber Rudolph's final fee request for these improper services and award compensation in a reduced amount.

## II.

### FACTUAL BACKGROUND

This case started as a "no asset" case based upon the information in the Debtor's schedules. However, the Trustee discovered the Debtor had misrepresented the status of his house. The Debtor scheduled a joint tenancy interest in the house with his ex-wife when title was really held as community property. Further, the Trustee learned the Debtor was not residing in the house because he was divorced but nevertheless was claiming it exempt as a homestead. Finally, the Trustee discovered the Debtor and his ex-wife had listed the property for sale for $335,000 a mere 34 days before filing bankruptcy but the Debtor listed the property in his bankruptcy schedules as being worth only $284,952. So the Debtor misrepresented the status of title, his right to an exemption and the fair market value of the residence. The Trustee discovered all of this at the § 341(a) hearing.

Although the Debtor did not file written objections to the Trustee's or Sparber Rudolph's fee applications, his counsel appeared at the hearing on their final fee applications. The Debtor's counsel represented that the Debtor (as opposed to his ex-wife who did not file and who was residing in the house) was cooperative with the Trustee once all this was discovered and agreed that the property could be sold by the Trustee. The time sheets for Sparber Rudolph indicate that such an agreement was, indeed, negotiated. However, Sparber Rudolph disputes that the Debtor was fully cooperative.

## III.

### LEGAL ANALYSIS (TRUSTEE'S COMPENSATION)

■ Section 326(a) sets forth the maximum compensation available to a trustee (the "statutory cap"). It is well recognized that the statutory cap is *not* an entitlement. *In re Arnold,* 252 B.R. 778, 788 n. 12 (9th Cir. BAP 2000). Rather, the court must determine the trustee's reasonable compensation in accordance with § 330(a) and award compensation in this amount, except that if the reasonable compensation exceeds the statutory cap, it must reduce the compensation to the statutory cap. *Arnold,* 252 B.R. at 788, n. 12; *In re Borrego Springs Dev. Corp.,* 253 B.R. 271, 276 (S.D.Cal.2000); *In re Roderick Timber Co.,* 185 B.R. 601, 605 (9th Cir. BAP 1995).

■ Section 330(a)(3)(A)-(E) clarifies the criteria to evaluate in determining reasonable compensation for a trustee. *Borrego Springs,* 253 B.R. at 276. Additional factors include: the time and labor involved; the novelty and difficulty of the questions presented by the case; and the experience, reputation and ability of the professional. *Id.* at 276 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)).

In the present case, the Court has considered the above criteria in connection with the Trustee's services performed in this case. The Trustee's services fall into two categories:

■ **A.** Administrative services including dealing with the listing and sale of the house; the preparation of reports; checking on the status of orders; employing an accountant; and the like. As observed in the recent *Garcia* decision, a trustee's services relating to general case administration and listing and sale of an undervalued

house are not complex and do not merit an hourly rate equating to $424/hr.:

> The trustee's services [liquidation of an undervalued house] involved neither complex analysis regarding the investigation of assets nor multiparty negotiations which were required by the trustee in *Miniscribe*. He did not run a business as a going-concern in order to sell it within a very short time frame such as the trustee in *Borrego Springs* .... Even so, the trustee requests a rate much higher than Mr. Johnson [his accountant], whose average billing rate was $80.45 per hour, and much higher than his attorneys whose average billing rate was $183.50 per hour.

*Garcia,* 317 B.R. at 829.[4] Based upon the trustee's services performed in *Garcia,* the court adjusted the trustee's rate downward from $375/hr. to $100/hr. for routine administrative services and $250/hr. for negotiation and title related services. *Garcia* at 829–30.[5] This Court agrees with *Garcia's* holding that a rate of $375/hr. or higher is *not* reasonable for the administrative services in a relatively routine, chapter 7 undervalued house case.

**B.** Other services involving analyzing the Debtor's title to the residence; analyzing the effect of the Debtor's dissolution on the title status (including legal research performed by the Trustee who is a lawyer); analyzing the appropriate distribution of the proceeds to the former spouse; negotiating a reduction of broker's commissions; and deciding to compromise a § 727 action. These issues were more complex and the services all involved higher-level trustee's skills. As indicated in *Garcia,* a higher hourly rate is appropriate for services of this nature. *Id.* at 829–30.

■ However, the legal actions required to get the Debtor to cease his efforts to sell the property, to abandon his claim of exemption and to account for his actions in a § 727 action were, of course, for the most part performed by the Trustee's counsel. As noted by the Court in its recent decision in *In re Pruitt,* 319 B.R. 636, 2004 WL 3094436 (Bankr.S.D.Cal. Dec. 17, 2004), in determining a trustee's reasonable compensation for a case, it is appropriate for the court to consider the extent to which the trustee has delegated complex tasks to professionals employed at estate expense. *Accord Garcia* at 829.

■ The Court believes that in assessing the balance between complex and routine matters in this case, the Trustee's normal hourly rate of $325/hr.—and his overall average hourly rate of $309/hr.—represents a fair blended balance between the mundane and the difficult aspects of this case. Awarding the Trustee's request for the statutory maximum allowable compensation under § 326(a) would result in an hourly rate of $424.51/hr. That rate does not, in this Court's view, represent a reasonable rate of compensation for this non-operating real estate case in which

---

4.  The court was referring to the cases of *In re Miniscribe Corp.,* 309 F.3d 1234, 1244 (10th Cir.2002) which affirmed the lower court's award of a trustee's rate of $400/hr.; and *In re Borrego Springs Dev. Corp.,* 253 B.R. 271, 275 (S.D.Cal.2000) which found a rate of $500/hr. to be a reasonable rate for the trustee's services in that case.

5.  The court indicates its decision to use two different hourly rates was unique to that case, and generally it would use a "unified blended hourly rate" method for all the trustee's services in a case. *Garcia* at 829–30. This Court agrees the unified blended rate method is the better method for most cases. *See Miniscribe,* 309 F.3d at 1244 (recognizing a trustee performs services that vary in complexity and agreeing the appropriate solution is to use a unified blended rate to adjust the trustee's overall fee).

Trustee's counsel performed many of the complex aspects of this case.

The Court observes that its award of a blended rate of $309/hr. is higher than the hourly rates awarded to the trustee in *Garcia.* The Court does not intend its award of compensation based upon a higher hourly rate as any dissent from the holding of *Garcia.* As indicated in *Garcia,* there is no *per se* hourly rate for trustees in this district, and the hourly rates in *Garcia* were unique to the facts of that case. *Id.* at n. 11.

Similarly, the award in this case is unique to the facts of this case. Specifically, the award is based upon the Court's assessment of the Trustee's overall experience, skill and other credentials; the services he performed in this case and the results obtained; the novelty and difficulty of the questions presented; and the "customary compensation" of comparably skilled practitioners performing similar services in nonbankruptcy cases.

The Court acknowledges the Trustee's qualifications are impressive. He has 22 years of active experience in the U.S. Navy and Marines with much of it involving a management role; he has a B.S. in Business Management, an MBA and a JD; he is a member of the California State Bar and a Board Certified Specialist in Personal and Small Business Bankruptcy with an active bankruptcy-related law practice for over ten years; and he has been a member of the Standing Panel of Bankruptcy Trustees since 1989. [*See* Fee Application at ¶ 17(a)-(c) ]

Notwithstanding, the Trustee did not need many of his higher-level skills for this case to justify compensating him at a rate of $424/hr. As the *Garcia* court aptly observed: "[a] Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *Garcia* at 830 (quoting *In*

*re Busy Beaver Bldg. Ctrs., Inc.,* 19 F.3d 833, 855 n. 34 (3rd Cir.1994)).

Finally, the Trustee presented no evidence of the customary compensation charged by comparably skilled practitioners other than to cite the hourly rates approved in *Borrego Springs* and *Miniscribe.* [Fee Application at ¶ 15(e) ] These cases are distinguishable because this Trustee did not operate an ongoing business or act as a Chief Operating Officer of a large and complex company as the trustees did in those cases.

Rather, the Court finds a blended rate of $309/hr. is comparable to the blended rate of his counsel Sparber Rudolph, and it is generally consistent with the hourly rates of other experienced professionals hired in other bankruptcy cases. *See Garcia* at 830 (indicating it is appropriate for a court to look to the rates charges by other professionals in the case, and to use its experience in handling fee petitions in other bankruptcy cases to determine the reasonableness of hourly rates). Accordingly, the Trustee will be awarded $15,157 as and for reasonable compensation for his services in this case, together with costs reimbursement of $242.41.

## IV.

## LEGAL ANALYSIS (SPARBER RUDOLPH'S COMPENSATION)

Sparber Rudolph was employed by the Trustee after he discovered that the Debtor and his former spouse had listed the property for sale prepetition and were proceeding with its sale without regard to the estate's interest. The Trustee's application to employ the firm described the scope of work relevant to this analysis as:

- Determining "whether the real property of the estate . . . is capable of being sold by the Trustee as a community property asset, or whether it is held in

joint tenancy by the debtor and his ex-spouse."

• To preserve the property from being sold by the debtor, "Applicant must retain counsel to file an adversary proceeding for injunctive relief, unless the debtor and his ex-spouse voluntarily consent to the Trustee's sale of the property."

• "Applicant also requires counsel to prepare documents and pleadings necessary to obtain Court approval of the sale of any property."

• "Additionally, if the asset is community property, it is necessary to research and analyze responsibility of community property for debts that were incurred pre and post dissolution."

• Trustee also needed counsel "[t]o appear for, prosecute, defend and represent applicant's interest in suits arising in or related to this case. . . ."

[See Ex Parte Trustee Application to Employ General Counsel at 2:10–24 (Docket # 15) ]

▬ Had Sparber Rudolph confined its services to the areas described in the Trustee's application to employ the firm, there would be no need for adjustment. However, as observed in the Garcia case:

"The function of an attorney for a trustee is to render to the estate those services which cannot and should not properly be performed by one who does not have a license to practice law." Shades of Beauty, 56 B.R. at 949 (citations omitted). "[T]he threshold question should be whether the services performed were those which one not licensed to practice law could properly perform for another for compensation." Id., see also Handbook for Chapter 7 Trustees, U.S. Dept. of Justice, Executive Office for the United States Trustees ..., Chapter 8, ¶ M(5) at p. 8–25 (March 1, 2001)("Attorneys and accountants may not be com-

pensated for performing the statutory duties of the trustee.")

Garcia, 317 B.R. at 816 (citations and brackets in original).

In reviewing Sparber Rudolph's Fee Application, the Court discovered numerous entries which, while not substantial in aggregate time in this case, show an unfortunate tendency by counsel to stray into performing duties which should have been performed by the Trustee. For instance: discussions with the broker regarding offers on the real property (2/18); marketing the property (2/27); access to show the real property to interested bidders; move out dates for the ex-spouse (5/9 and 6/3); and numerous discussions with the broker generally addressing the "status" of the sale (3/25, 3/27, 4/22, 5/19, 6/11, 6/17, 6/25, etc.)—are all examples of actions which should have been taken by the Trustee. These services would have been categorized as "routine" had a trustee performed them and, absent a showing of additional complexity in the case, a trustee would not be entitled to compensation at a high hourly rate. Instead, we have Sparber Rudolph performing these services and requesting compensation at the rate of $325/hr.

▬ Because the Court cannot compensate an attorney for performing the statutory duties of a trustee, the Court deducts $1,367.50 from the compensation awarded Sparber Rudolph and awards $26,330.50 as final compensation in this case.

## V.

## CONCLUSION

The Court concludes enhanced compensation in the amount of the maximum statutory cap is not reasonable compensation for the Trustee's services in this case.

The Trustee is awarded reasonable final compensation of $15,157 and final costs of $242.41 for his services in this case. The Court finds Sparber Rudolph improperly performed services that should have been performed by the Trustee. Accordingly, the Court deducts $1,367.50 from Sparber Rudolph's compensation request and awards $26,330.50 in final compensation and $1,505.39 in costs reimbursement for its services in this case. Sparber Rudolph is directed to prepare and lodge an order for the above amounts within ten days of the date of entry of this Memorandum Decision.