**In re David L. PRUITT and Sea Coast Greenhouses, LLC, Debtors.**

No. 02–01762–A7.

United States Bankruptcy Court, S.D. California.

Dec. 17, 2004.

Thomas B. Gorrill, Esq., San Diego.

Richard Kipperman, La Mesa, CA, Chapter 7 Trustee.

## MEMORANDUM DECISION

LOUISE DECARL ADLER, Bankruptcy Judge.

### I.

### INTRODUCTION

Richard M. Kipperman, chapter 7 trustee ("Trustee") for the above-referenced

debtors, has applied for final compensation of $159,185.27 and reimbursement of costs of $2,202.57 in these cases. He computes his request using the percentages for the maximum compensation a trustee may be paid as provided by 11 U.S.C. § 326(a).[1]

■ This case represents a recurring difficulty with fee awards in chapter 7 cases. The Trustee's application for compensation is unopposed; no creditor has objected. The Office of the United States Trustee ("UST") has not commented on his request nor that of any of his counsel. The Court is left as the sole gatekeeper of monies being paid out of the estate for professional fees and trustee's compensation. However, the Court has an independent duty to investigate the reasonableness of compensation sought. *See* Fed. R. Bankr.P.2016(a).

Where, as here, there is a tension between the Trustee's role as the representative of creditors on the one hand and, on the other hand, his own self-interest in maximizing his compensation, beyond the mere *power* to review this fee application, the Court has a *duty* to scrutinize the application in the interest of protecting the integrity of the bankruptcy system. *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 841 (3rd Cir.1994). While this Court understands the opinion expressed herein will have no advocate, other than this Court and perhaps the creditors of this estate, as eloquently expressed by another bankruptcy court cited in the *Busy Beaver* opinion:

> The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law .... Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.

*Busy Beaver*, 19 F.3d at 841 (quoting *In re Evans*, 153 B.R. 960, 968 (Bankr.E.D.Pa. 1993) (brackets in original)).

For the reasons more fully set forth herein, the Court concludes the maximum compensation is, in this instance, not reasonable and reduces it. Further, the Court also reduces the Trustee's cost reimbursement request as containing costs which are not reimbursable under the statute.

## II.

## FACTUAL SUMMARY

In February 2002, David L. Pruitt filed a petition for relief under chapter 11; about two weeks later his business Sea Coast Greenhouses, LLC filed its chapter 11 petition as well ("Debtors"). The cases were substantively consolidated in September 2002. The Debtors proposed a plan of reorganization but met with stiff opposition from their creditors. Even after being ordered to mediation on the plan terms, they were unable to propose a consensual plan. The Debtors undertook liquidation of their various agricultural properties but prior to the hearing on the first sale, in November 2002, they asked that their cases be converted to cases under chapter 7. Richard Kipperman was appointed the chapter 7 trustee.

---

1. Hereinafter, all code and chapter references are to 11 U.S.C. § 101 *et seq.* unless otherwise specified.

**A. Trustee's Services:**

From the outset, this was not an operating case. The Trustee's duties in the case were typical of those of a chapter 7 trustee: secure the property; if appropriate, list the property for sale; sell the property; object to claims; and explore avoidance action possibilities. This case was somewhat atypical in that the Trustee had two sets of counsel employed to represent the estate. He employed as special counsel the firm of Pyle, Sims, Duncan & Stevenson ("PSDS"), who had been the counsel for the Official Creditors' Committee in the chapter 11 case. Because PSDS had been actively involved in assisting the Debtors with liquidation of the realty, the Court granted, with instructions to avoid duplication, the Trustee's request to employ PSDS as special counsel as to the realty which was in the process of being sold at the time of conversion. Additionally, the Trustee employed as general counsel the firm of Ferrette & Slater ("F & S"), and he employed Lamb & Meyer as his accountants.[2]

The Debtors owned three pieces of real property and the Trustee had duties with respect to each of them. They were:

**1. 208 Godfrey St., Oceanside CA.:** This was a single family residence undergoing demolition at the time of the petition date. The Debtors valued it at $265,000 with a debt of $275,000. The property was sold at auction without a broker for $340,000 with the estate recovering net proceeds of $61,000. [See PSDS First and Final Fee App. filed August 12, 2003 at p. 12–13]

In connection with this sale, the Trustee documents 5.5 hours of his time which at his claimed rate of $325/hr. equates to $1,787.50. Additionally, PSDS was compensated for services in connection with this sale totaling $3,822.

**2. 608 Normandy, Encinitas, CA.:** This property consisted of a 2.9 acre residential parcel and a contiguous 4.83 acre agricultural parcel. The Debtors valued the parcels at $2.045M; American AgCredit ("AgCredit"), the lienholder, appraised the parcels at $2.5M but only if the parcels were sold together. There was an additional complication with these parcels: Mr. Pruitt's ex-wife held a recorded right of first refusal on the residential parcel. When the Court recognized the right of first refusal as a limitation on the Trustee's ability to sell, a re-noticing of the sale was required. Ultimately, the two parcels were sold together, without the right of first refusal being exercised, for $2.775M. It appears that the estate netted $1.1M after payment of the secured claims and costs of sale (the Trustee retained a broker to sell the property who was paid $159,500). [See PSDS Fee App. at p. 10; F & S First Interim Fee App. filed August 14, 2003 at p. 13:19–20]

In connection with this sale, the Trustee documents 27 hours of his time which at his claimed rate of $325/hr. equates to $8,775. The Trustee's special counsel PSDS expended 175.7 hours of time, totaling $45,486. The right of first refusal issue also involved the Trustee's general counsel F & S who billed $7,417 advising the Trustee about the sale, and another $16,305 advising the Trustee about the ex-wife's right of first refusal. In other words, general and special counsel fees in connection with the sale alone totaled $69,208.

---

2. The Trustee also utilized the services of his staff attorney, John Standly, who was not employed to represent the estate.

The sale was not the end of the problems with this property. Sometime after it was sold but before escrow closed, the Trustee was notified by the City of Encinitas that there were environmental contamination and security issues with the property. The Trustee had to hire a security service and deal with the environmental cleanup. The Trustee's hours expended in connection with these problems total 6.7 hours which at $325/hr. equate to $2,177.50. However, it also appears that his general counsel was more heavily involved in these issues since F & S billed $21,369.50 for its services in negotiating an agreement to have the buyer of the property assume liability for the cleanup.

**3.** *10210 Paso de Flora, Escondido, CA.:* This property was a 2 acre residential parcel with a contiguous 24 acre agricultural parcel. The Debtors valued the property at $825,000 and claimed a homestead in it. The property ultimately sold for $695,000 to a buyer procured by the Debtors during the chapter 11 case. Real estate brokers were employed by both the buyer and the Trustee and were paid commissions of $34,750. The estate realized net proceeds of $107,000, without adjustment for Mr. Pruitt's $75,000 homestead exemption claim.

In connection with this sale, the Trustee documents 2.5 hours of time which at his claimed hourly rate of $325/hr. equals $812.50. PSDS, his special counsel, billed $6,734 in connection with the sale; F & S, his general counsel, billed $2,038 in connection with the sale.

In addition to his duties with respect to liquidating the Debtors' three parcels of real estate, the Trustee also claims credit for reduction of the AgCredit lien. AgCredit had numerous liens on the Debtors' realty, one of which—on Paso de Flora—was recorded 33 days prior to the Debtors' chapter 11 filing. This gave rise to a question of whether the debt was avoidable as a preference. Although the Trustee had some involvement in deciding what amount the eventual settlement should be, it appears most of the negotiations were appropriately handled by his counsel. The AgCredit liens were reduced an aggregate of $38,869.30. [Docket # 483] The Trustee spent 4.7 hours which at his claimed hourly rate of $325/hr. equals $1,527.50; F & S spent $22,662.50 in fees on this service.

### B. *Trustee's Compensation Request:*

The Trustee's application seeks $159,185.27 in fees and another $2,202.57 in costs. The fee request is based on application of the percentage fee allowed under § 326(a). After deducting from this § 326(a) calculation the hourly compensation attributable to his staff ($7,285.50), this would equate to paying Kipperman $1,413.63/hr. for his services in this relatively routine non-operating case. By contrast, were the Trustee to be compensated on an hourly basis at the hourly rates he normally claims for himself and his staff, the compensation award would be $43,120.50.

### III.

### ISSUE

Whether the Trustee is entitled to the maximum compensation available under § 326(a) as "reasonable compensation" for his services in this case.

### IV.

### ANALYSIS

### A. *The Trustee's Compensation Award:*

Section 326(a) sets forth the maximum compensation available to a trustee (the "statutory cap"). It is well recognized that the statutory cap is *not* an entitle-

ment. *In re Arnold*, 252 B.R. 778, 788 n. 12 (9th Cir. BAP 2000). Rather, the court must determine the trustee's reasonable compensation according to the appropriate criteria and, if the reasonable compensation exceeds the statutory cap, it must reduce the compensation to the statutory cap. *Arnold*, 252 B.R. at n. 12; *In re Borrego Springs Dev. Corp.*, 253 B.R. 271, 276 (S.D.Cal.2000); *In re Roderick Timber Co.*, 185 B.R. 601, 605 (9th Cir. BAP 1995).

Section 330(a)(3) sets forth the criteria to evaluate in determining reasonable compensation for a trustee. This section requests the court to consider the "nature, the extent and the value of such services, taking into account all relevant factors, including–

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title."

The criteria used for setting reasonable trustee compensation closely resemble those factors used for awarding attorney compensation. *In re Garcia*, 317 B.R. 810, 828–29 (Bankr.S.D.Cal.2004); *Borrego*

*Springs*, 253 B.R. at 275(citing *In re Financial Corp. of Am.*, 114 B.R. 221, 223 (9th Cir. BAP 1990), *aff'd*, 946 F.2d 689 (9th Cir.1991)). These factors include: the time and labor involved; the novelty and difficulty of the questions presented by the case; and the experience, reputation and ability of the professional. *Borrego Springs*, 253 B.R. at 275 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)).

In the present case, the Trustee documents 107.1 hours of time spent by him alone [3] but he also claims that somehow his time records and those of his staff reflect only "approximately 80% of the actual number of hours spent over the relevant period." [Second and Final Fee App. filed August 24, 2004 at 8:24–6] The Trustee's failure to keep accurate time records ignores § 2–2.83 of the United States Trustee Manuel for Chapter 7 Case Administration which provides, "[t]he trustee should keep time records in every asset case as evidence of the services performed." [4] Additionally, the case law in this circuit confirms a trustee should keep accurate time records in most cases. *See Roderick Timber Co.*, 185 B.R. at 605–6 (recognizing the rule that a trustee must keep accurate time records, except perhaps where the trustee is operating an ongoing business and attempting to reorganize the debtor, wherein it might not be realistic to expect the trustee to prepare a time slip on each function he performs during the day). In this case, however, the Trustee was not operating a business as a going concern as did the trustee in the *Borrego Springs* case.[5] As stated in the

---

**3.** His staff spent another 91.4 hours. They appear to be a bookkeeper, an "assistant" and a lawyer.

**4.** The manual is available on United States Department of Justice website under "U.S. Trustee Program."

**5.** In *Borrego Springs,* the trustee operated a Country Club development which included an

*Roderick Timber* case, "[i]t has long been the rule in this circuit that trustees have a duty to meticulously maintain accurate records of time expended on behalf of the estate." *Id.* at 605(citing *Matter of Beverly Crest Convalescent Hosp., Inc.*, 548 F.2d 817, 820 (9th Cir.1976)).

■ Because of this overarching duty to maintain accurate time records, the Court declines to consider the Trustee's estimated hours in addition to those which he and his staff actually recorded in evaluating the factors set forth in § 330(a)(3)(A) and (D) as discussed above. However, having declined to consider these additional unrecorded hours, the Court finds that the amount of time expended by the Trustee in the performance of his duties appears adequate. While the Trustee could have spent more of his time and less of his counsel's time in obtaining a resolution of the clean-up issues with the City of Encinitas, the Court also understands that the assistance of counsel in that matter may have been more conducive to achieving results.

In evaluating the Trustee's services under subsection (C) ("whether the services were necessary to the administration of, or beneficial at the time the service was rendered toward the completion of, a case under this title"), the Court finds the Trustee's services in administering this estate adequate, though not extraordinary. No special skill or novelty was involved in the tasks the Trustee was called upon to perform. The Godfrey and the Paso de Flora sales as discussed above were routine in nature. Indeed, the Godfrey sale was a

"given"—an offer was in place when the Trustee was appointed. Although the Normandy sale raised legal complications, they were solved by the Trustee's lawyers, not the Trustee. Similarly, there is no indication that the Trustee was "responsible" for the reduction in the AgCredit lien. While the Trustee provided information to his counsel about the value of the assets securing AgCredit's lien, it is clear from the detailed time entries reviewed in F & S's First and Second Interim Fee Applications that F & S conducted those negotiations, not the Trustee.[6] The "value" realized by the sale of assets in this estate cannot be ascribed to more than the serendipity of a frenzied San Diego real estate market.

Assessing subsection (E) ("whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title") is problematic. At the outset, the Court observes that unlike attorneys or accountants, there is no true "market" for bankruptcy trustees' services. Trustees are a limited group of persons approved by the Department of Justice for service in bankruptcy cases. There is a panel formed in each district and in most instances, all liquidation and reorganization cases in which a trustee is appointed by the Office of the United States Trustee—whether complex or simple—are assigned to panel trustees.[7]

While there are state court receivers and assignees for benefit of creditors who in some instances perform services similar

---

18 hole golf course and residential estate totaling 3,140 acres. *Id.* at 273.

**6.** *See* Exh. "B" to First Interim Fee App. of F & S filed August 14, 2003 at p. 32–4; *see also* Exh. "B" to Second Interim Fee App. of F & S filed April 9, 2004 at p. 3–8.

**7.** This district has eight standing chapter 7 trustees who are appointed on a random rotation basis. The criteria used by the UST to select trustees are unknown. Of the eight current trustees, four are lawyers; four are non-lawyers. Of the four non-lawyers, three, including Kipperman, have a business background.

to those of bankruptcy trustees and may be "comparably skilled," the Trustee's application for compensation is not supported by evidence of how those *other* practitioners are compensated. Rather, the Trustee provides this Court with a summary of his *own* compensation in various non-bankruptcy assignments such as his services as an assignee for benefit of creditors (on a percentage basis); as a court-appointed state court receiver (on an hourly basis, sometimes with a minimum monthly stipend); as a liquidating agent in a federal forfeiture proceeding (on a percentage basis); and serving by agreement, as a responsible officer on a percentage basis. [*See* Trustee's Declaration in Support of his Application for Second and Final Award of Compensation filed August 24, 2004, Docket # 825.] While that information is helpful, it is also certainly self-serving.

In evaluating the Trustee's services in this case, the Court is well aware that a trustee's role is different from that of an attorney and may be compensated differently. If, for example, this Trustee had served in lieu of a CEO in an operating business, the Court could consider what a full-time CEO in that industry is compensated in determining the reasonableness of the statutory rate. *See In re MiniScribe Corp.,* 257 B.R. 56, 63 (Bankr.D.Colo.2000), *rev'd on unrelated grounds* 309 F.3d 1234 (10th Cir.2002)(recognizing a court may consider the fees charged by non-attorney professionals to fix a "reasonable" trustee's fee); *accord Borrego Springs* at 278–9. In his application for compensation, the Trustee bills his services and those of his staff at varying hourly rates[8] but the

Court assumes he provides this for informational purposes, as he is not requesting compensation on an hourly basis in this case. So the Court must determine what, if any, unique aspects of this case should result in a finding that it is reasonable for his compensation to be nearly four times as much as he would receive were he being compensated on an hourly basis.

■ In assessing the value of the Trustee's services, it is appropriate for the Court to consider the extent to which the Trustee employed and relied upon professionals such as lawyers, accountants, and debt collection firms to assist him in his duties, all at expense to the estate. *Garcia,* 317 B.R. at 829–30. In this case those expenses were great: the Trustee's general and special counsel were paid fees and costs totaling $432,599.51; the Trustee's accountants were paid $64,689.06. While the Court cannot compensate the Trustee's professionals for performing his duties, sometimes it is difficult to delineate with precision which duties could have been performed by a trustee as opposed to his/her professionals.[9]

■ For example, near the time of the auction of Normandy, it appears Trustee's special counsel PSDS learned of some vandalism to the Normandy property on May 5, 2003 and immediately notified the Trustee. [*See* Exh. "C" to First and Final Fee App. of PSDS filed August 12, 2003 at p. 21]. According to his time records, the Trustee investigated the property damage on May 9, 2003 and arranged for some security on May 13, 2003. [*See* Exh. "B" to First Interim Fee App. of Trustee filed August 14, 2003 at p. 9] Finally, he hired a

---

**8.** The Trustee's rate was $325/hr. until July 1, 2003; thereafter, it increased to $350/hr. He bills his "assistant" Ms. Winn at $85/hr.; his bookkeeper Ms. Lind at $45/hr.; and a staff attorney, Mr. Standly, at $240/hr.

**9.** *See Id.* at 826–27(finding the bulk of the work performed by the trustee's attorney was not compensable because it was inappropriately delegated and should have been performed by the trustee himself).

security service on or about May 23, 2003. [*Id.* at p. 9] However, inexplicably he also involved his general counsel as well who then once again involved his special counsel-all on the simple issue of vandalism and all at estate expense. [*See* Exh. "B" to First Interim Fee App. of F & S filed August 14, 2003 at p. 70–72]. It appears that Kipperman did not even make the initial vandalism claim under the property insurance. [*Id.* at page 72] It is difficult to calculate exactly the amount of time spent by counsel during the period of May 5, 2003 to June 9, 2003—the date of the Emergency Ex Parte Application to Employ Security Guard Pending Sale of Normandy Property (Docket # 438).[10] However, it appears that even *excluding* the legal services necessary to prepare the application to employ the security guard, and *excluding* the services clearly relating to an apportionment between the buyer and the estate on the insurance proceeds of the vandalism claim, general and special counsel spent a minimum of 8.2 hours on the vandalism issue; whereas the Trustee spent only 4.8 hours attending to this issue. Yet, securing the property would seem to be a basic duty of a trustee. Whether the Trustee inappropriately delegated this task to his counsel is arguable. Nevertheless, where there are examples of a number of "grey area" tasks assigned to a professional rather than performed by the trustee, the Court appropriately considers this in determining the reasonable compensation for the Trustee's service in a case.

In applying the above criteria to this case, and after considering the Trustee's evidence of the compensation he would be paid in non-bankruptcy cases, the Court concludes the statutory cap is not reasonable compensation for the services the Trustee performed in this case. Rather, the Court finds that compensating the Trustee on a straight hourly basis is fair and reasonable in this case. As mentioned above, the Trustee billed his time for services in this case at $325–$350 per hour. That rate appears somewhat high when compared to the rates charged by the highest-paid partners of his own well-experienced bankruptcy counsel and accountants employed in this case.[11]

Indeed, it is also somewhat higher than the hourly rates billed by other trustees in this district. However, Kipperman is a seasoned and well-experienced trustee, and he did delegate many of his duties requiring less skill to his in-house staff of paralegals and assistants.[12] As a result, the Trustee's "blended" rate in this case was overall $217/hr. While the Court could certainly undertake an hour-by-hour analysis of the degree of difficulty and skill required in each of the Trustee's time en-

---

10. The calculation is difficult because F & S lumped together services involving the hazardous waste on Normandy with services involving the vandalism. The Court has divided the time entries in half when the entry appeared clearly divisible but did not count others when the entries were not. Further, the F & S entries in its Application relating to the vandalism issue were balkanized among categories called "Standard Bankruptcy Administration," "Employment Applications" and "Normandy Property: Ins. & Environ. Clm." [ *See* First Interim Fee App. at p. 57, p. 70–77 and p. 103–4]

11. Gary Slater, a senior partner of F & S and a bar member since 1981, charged $300/hr. in this case; Peter Duncan, a senior partner of PSDS and a bar member since 1986, charged $260/hr. in this case; Francine Meyer (deceased), a senior partner of Lamb & Meyer, CPA since 1986, and a CIRA member, charged $210/hr.

12. His Final Fee Application represents that 91.4 hours of the total 198.5 hours spent in this case were performed by his assistant, bookkeeper or staff attorney. [Fee App. at 8:10–21].

tries in this case, in view of this extensive delegation, the Court will not do so.

■ Included in the amount of hourly charges totaling $43,120.50 are charges for the Trustee's staff attorney, Mr. Standly, who spent 6.3 hours of time on this case, which at his claimed hourly rate of $240/hr. equates to $1,512.00 billed to the estate. Mr. Standly was not employed under § 327(a) to act as an attorney to represent Trustee in this case. His rate of $240/hr. suggests that he was billed as an attorney as opposed to a "paraprofessional" of the Trustee. The Court cannot award any compensation for Mr. Standly's services absent a showing that he was properly billed as a "paraprofessional." Further, the Trustee's application for compensation is silent as to Mr. Standly's qualifications justifying such a high hourly rate for his services other than those rendered as an attorney. *See In re Jenkins,* 130 F.3d 1335, 1341(9th Cir.1997)(recognizing a trustee may receive compensation for trustee duties performed by a "paraprofessional" of the trustee provided the trustee's total compensation does not exceed the statutory cap in § 326(a); whereas § 327 allows a trustee to hire "professionals" to perform services requiring special expertise beyond that expected of an ordinary trustee and to compensate them separately for actual, necessary services under § 330(a)). Accordingly, the Court will deduct the expense of Mr. Standly's services and award reasonable compensation to the Trustee in this case of **$41,608.50.**

## B. *The Trustee's Reimbursement for Costs:*

■ At the final fee application hearing, this Court questioned a costs reimbursement entry described as "OTC: Objections to Claim 45 @ $15.00/ objection $675.00." [*See* Exh. "A" to Second and Final Fee App. of Trustee filed August 24, 2004 at p.

4] In the Supplemental Declaration of Richard M. Kipperman filed September 23, 2004, the Trustee explains it is his belief that he is entitled to be reimbursed for filing claim objections based on "a document summarizing proper charges by chapter 7 trustees, entitled 'Costs and Expenses Reimbursable to Trustees from Chapter 7 Estates for the Southern District of California,' which document was provided to me by the United States Trustee's Office." He then states that he believes the document was given to him at a seminar more than five years ago.

Without more, this is insufficient support for this claim for reimbursement. First, it appears to be not so much a claim for reimbursement of an identifiable cost as it is an award for services undertaken by a trustee in performance of his duties. To that extent, it is susceptible to running afoul of the statutory cap on a trustee's compensation found in § 326 (although admittedly not in this case since the Court is not awarding the Trustee his requested statutory cap). Second, there is no recent statement from the UST supporting a right to reimbursement at a fixed cost of $15/claim. As the Trustee is well aware, there have been at least two changes in this region's UST since that seminar sheet was issued. The UST's office fixes reimbursement rates for such costs of facsimiles and photocopies; if this were still considered a reimbursable cost by that office, surely a more recent statement of that policy would be available. Accordingly the Court disallows $675 of the Trustee's cost reimbursement request and awards **$1,516.75** as his final costs reimbursement.

## V.

## CONCLUSION

The Trustee is awarded $41,608.50 in reasonable final fee compensation and

$1,516.61 in final costs reimbursement for his services in this case. To the extent the Trustee has been paid interim compensation in excess of the amount awarded herein, he is ordered to repay the estate forthwith. Interest on any unpaid amounts will accrue at the judgment interest rate commencing 30 days after entry of the order on this Memorandum Decision.